IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NICHOLAS H.,[1]                                              No. 3:24-cv-01735-YY

              Plaintiff,                              OPINION AND ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

YOU, Magistrate Judge.

     Plaintiff Nicholas H. seeks judicial review of the Social Security Commissioner's final decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). 42 U.S.C. §§ 1381–83. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). The Commissioner's decision is REVERSED and REMANDED for the reasons set forth below.

**PROCEDURAL HISTORY**

     Plaintiff filed an application for disability insurance benefits ("DIB") on July 24, 2018, alleging a disability onset date of January 1, 2012. Tr. 160. The Commissioner denied plaintiff's claim initially on August 28, 2018, and again upon reconsideration on October 11, 2018. Tr. 99, 105. Plaintiff then requested a hearing, which was held before an administrative law judge on

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

June 11, 2019. Tr. 33–75. On July 26, 2019, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 14–32. The Appeals Council denied review of plaintiff's claim, and plaintiff timely appealed. Tr. 1, 1104. In May 2021, this court remanded plaintiff's claim to the Commissioner for further proceedings, including orders to further develop the medical record and to provide plaintiff an opportunity for a new hearing. Tr. 1104–18.

At a second hearing on January 11, 2023, plaintiff testified, along with a medical expert, George Bell, M.D., and a vocational expert ("VE"), Thomas Weiford. Tr. 1038–65. On May 17, 2023, the ALJ issued a new decision, again finding plaintiff was not disabled within the meaning of the Act. Tr. 1011–37. Plaintiff appealed, and following a stipulated agreement with the Commissioner, his claim was again remanded for further proceedings. Tr. 3039–40.

A third hearing was held on September 13, 2024, before a different ALJ. Tr. 2975–3002. David Peterson, Ph.D., provided testimony and Kelly McCain provided VE testimony. Tr. 2983-94, 2996-3001. On September 27, 2024, the ALJ issued a decision finding plaintiff was not disabled. Tr. 2946-74. This appeal followed.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

The ALJ determined that plaintiff last met the insured status requirements of the Act on December 31, 2016. Tr. 2952. Thus, plaintiff must show he met the criteria for DIB between January 1, 2012, his alleged onset date, and December 31, 2016, his date last insured. *See* 20 C.F.R. § 404.131(a).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 2952. At step two, the ALJ found that plaintiff had the following severe, medically determinable impairments: post-traumatic stress disorder ("PTSD"), mood disorder, spine disorder, and left ankle disorder. Tr. 2952. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1. Tr. 2953. The ALJ assessed that plaintiff had the residual functional capacity ("RFC"):

> to perform medium work . . . except [he] can occasionally push/pull with the left lower extremity, including operation of foot controls; [he] can frequently climb; [he] is limited to understand, remember, and carry out simple instructions; [he] can have no public interaction, but he can have occasional interaction with coworkers and supervisors; [he] can perform no fast-paced or piece rate work.

Tr. 2954.

At step four, the ALJ determined that plaintiff had no past relevant work. Tr. 2964. The ALJ then found that, considering plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers that plaintiff could perform, including hand packager, industrial cleaner, and auto detailer. Tr. 2965. Thus, at step five, the ALJ found that plaintiff was not disabled. Tr. 2966.

## DISCUSSION

Plaintiff claims the ALJ erred in (1) evaluating the medical opinions of George Bell, M.D., Gary Monkarsh, Ph.D., and David Peterson, Ph.D., and (2) improperly relying on the VE's testimony at step five.

## I.    Procedural Background

On May 8, 2021, this court reversed and remanded the prior ALJ's July 31, 2019 decision for further proceedings. Tr. 1104. The court found the ALJ did not err in discounting plaintiff's subjective symptom but remanded the case for the ALJ to fully develop the record. The court observed "the state agency physicians were unable to evaluate Plaintiff's functional capacity prior to his date last insured because there was 'insufficient evidence' at the time of their evaluations," and "there appear to be no other medical opinions considered by the ALJ." Tr. 1116. Because "the record was inadequate for the ALJ to properly evaluate the evidence," and

the ALJ "cannot rely solely on his interpretation of the medical records in assessing [a claimant's] RFC," the court found the ALJ "failed to fully develop the record." Tr. 1116-17 (citations omitted). The court instructed the ALJ to "develop the record by obtaining additional information from Plaintiff's physicians or calling a medical expert." Tr. 1117.

On remand, a medical expert, George Bell, M.D., was appointed and provided testimony "primarily cover[ing]" the period between January 1, 2012, through December 31, 2016. Tr. 1335. Plaintiff also supplemented the record with his Veteran's Administration records. Tr. 1044.

## II.    Medical Opinion Evidence

For claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)–(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. § 404.1520c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). Of these, the factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. § 404.1520c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means

the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)). An ALJ must articulate how persuasive a medical opinion is and how the supportability and consistency factors were considered. 20 C.F.R. §§ 404.1520c(a)–(b).

**A.    George Bell, M.D.**

At the January 11, 2023 hearing, Dr. Bell testified regarding the nature and severity of plaintiff's impairments between the alleged onset date of January 1, 2012, and the date last insured of December 31, 2016. Tr. 1046-47. Dr. Bell opined that plaintiff has a mood disorder—sometimes diagnosed as major depressive disorder and other times as bipolar disorder—that meets Listing 12.04. Tr. 1047. Dr. Bell explained that plaintiff has "elements of both" depressive disorder under Listing 12.04(A)(1) and bipolar disorder under Listing 12.04(A)(2). Tr. 1050. Dr. Bell observed that plaintiff also has PTSD that meets Listing 12.15, Tr. 1052, but concluded that the "main area is the mood swings" in Listing 12.04. Tr. 1049.

Dr. Bell opined that when plaintiff was not suffering from depression or mania, his ratings on the paragraph B areas of mental functioning are "fairly benign," i.e., mild for understanding and remembering, social functioning, and concentration, and mild to moderate for managing himself. Tr. 1048. However, when plaintiff was severely depressed or manic, he was moderately impaired for understanding and remembering and managing himself, and markedly impaired for social functioning and concentration, due in part to his "significant anger issues" and PTSD, thereby meeting two areas of marked limitation under paragraph B. Tr. 1048. Dr. Bell opined that, during the relevant period, "20% of the time [plaintiff's] symptoms would be severe enough that he would meet the listing[.]" Tr. 1053. Dr. Bell added that, in his opinion, this

"would be . . . incompatible with working because no job's going to hire someone who's nonfunctional 20% of . . . the time." Tr. 1053.

In support of his conclusions, Dr. Bell relied on exhibit 10F, which consists of plaintiff's VA records from March 8, 2008, through August 2, 2021. Tr. 1049; *see* Tr. 1919. Dr. Bell explained these records show that plaintiff "gets upset randomly, he has trouble concentrating; his memory is poor; he isolates; [and] he gets angry." Tr. 1049. Dr. Bell also cited to exhibit 11F, which are plaintiff's VA records from March 12, 2019, through July 20, 2022, and contain details regarding plaintiff's suicide attempts in 2009. Tr. 1049; *see* Tr. 2381. Additionally, Dr. Bell cited exhibit 4F, plaintiff's Columbia Community Mental Health records from May 8, 2009, to September 20, 2020, which describe plaintiff's "anger issues, trouble with concentration, expansive mood, poor memory, decreased concentration [and] attention," and concentration that was "only fair at best." Tr. 1049; *see* Tr. 380. Dr. Bell explained that, although some of these reports were from outside the 2012 to 2016 relevant time period, plaintiff suffered from "active" symptoms "throughout this entire time," and the symptoms described in these reports were consistent with those that plaintiff experienced between 2012 and 2016. Tr. 1055-57.

The ALJ found Dr. Bell's opinion was not persuasive. Tr. 2960. The ALJ first noted Dr. Bell's opinion that plaintiff's "symptoms would meet the severity of the listings 20% of the time is vague." Tr. 2961. There is nothing vague about it. Dr. Bell clearly explained that during 20% of the relevant time period, plaintiff was severely depressed or manic such that his symptoms were "severe enough" to constitute marked limitations in two areas of mental functioning under paragraph B, thereby meeting Listing 12.04. Tr. 1053.

The ALJ further discounted Dr. Bell's opinion because "his conclusion regarding employability addresses a vocational issue and is not a medical opinion" and "[t]his is not the

correct standard for whether the severity of the claimant's impairments meets a listing." Tr. 2961. Notably, the VE also testified that someone who was absent from a job 20% of the time would not be able to maintain competitive employment. Tr. 2999.

Nevertheless, even disregarding Dr. Bell's opinion that "no job's going to hire somebody who's nonfunctional 20% of the time," Dr. Bell otherwise gave his opinion regarding whether plaintiff had a "severe, medically-determinable impairment" between 2012 and 2016 and "the nature and severity of [plaintiff's] impairments," as the ALJ specifically asked him to do, *see* Tr. 1046-47, and this included his opinion that "20% of the time [plaintiff's] symptoms would be severe enough that he would meet the listing." Tr. 1053.

As for the ALJ's conclusion that Dr. Bell's opinion was "not well supported by citation to frequency of manic/depressed period in the record," Tr. 2961, this dovetails into the ALJ's conclusion that Dr. Bell's opinion was "inconsistent with the medical record which shows generally normal mental functioning during the relevant period, including the claimant's generally normal memory, thought process, alertness, attentiveness, and orientation, concentration, judgment, generally normal mood and affect, normal speech, eye contact, grooming, and cooperative and pleasant behavior." Tr. 2961. It also relates to the ALJ's conclusion that while plaintiff's "symptoms wax and wane by their nature, the medical record during the relevant period simply does not indicate the severity of symptoms he reports." Tr. 2958.

In support, the ALJ cites to two pages of the record, which the ALJ relies upon to describe plaintiff's "history of fair concentration." Tr. 2953 (citing Tr. 969, 975). Notably, these records relate to plaintiff's second suicide attempt in 2009 when he tried to shoot himself in the head; earlier that year, plaintiff also attempted suicide by overdosing. Tr. 969, 975, 2509, 2495.

The records further describe plaintiff's "[d]ocumented sexual abuse as a child, age 5-8" and binge drinking to blackout stage several times a month after returning from serving as a Marine in Iraq in 2006. Tr. 969. While, as the ALJ noted, the records describe plaintiff's concentration as "fair," they also state that plaintiff told medical staff he would be "better off dead," and describe plaintiff as depressed, presenting with a flat affect, and exhibiting impaired judgment and impulse control. *Id.*

The ALJ also cites records from March 2008 to show that, despite plaintiff's circumstantial thought process, he could perform simple, routine tasks. Tr. 2958 (citing Tr. 2363). If anything, these records, which reflect a period during which plaintiff was exhibiting symptoms of severe depression and combat-related post-traumatic stress disorder, support Dr. Bell's opinion. Tr. 2363. They describe that plaintiff had returned from Iraq one year prior and displayed a depressed mood with a blunt affect. *Id.* Plaintiff reported having nightmares and intrusive memories of dead bodies. Tr. 2362. In Iraq, plaintiff saw dead bodies of fellow soldiers, some of whom were his friends. *Id.* He recalled a particular soldier he had spent time with almost every day "whose body came blown in half." *Id.* Plaintiff had trouble sleeping, and when he finally got to sleep at 3 a.m., he would sleep until the early afternoon. *Id.* He experienced physical effects related to his mental condition, including pounding heart, trouble breathing, and sweating, which were getting more intense. *Id.* Plaintiff was irritable, had anger outbursts, had difficulty concentrating, and felt "super alert and on guard." *Id.*

The ALJ relies on records from a short period during August, October, and December of 2012 to show that plaintiff displayed "occasionally fair judgment during the relevant period (5F/350, 352, 360, 470)," Tr. 2958, and larger portions of the record to show that plaintiff had "relatively normal mental status exams." Tr. 2961. However, as the ALJ even recognized, mental

health "symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017.

"Cycles of improvement and debilitating symptoms are a common occurrence, and in such

circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a

period of months or years and to treat them as a basis for concluding a claimant is capable of

working." *Id.* The records the ALJ cited are consistent with Dr. Bell's conclusion that there were

periods of time where plaintiff was not severely depressed or manic; however, when plaintiff

was severely depressed or manic, which he was 20% of the time, he exhibited marked limitations

in two areas of mental functioning under paragraph B, thus meeting Listing 12.04. Tr. 1048.

The ALJ also discounted Dr. Bell's opinion because he "seems to have relied heavily on

records outside the adjudicative period." Tr. 2961. But Dr. Bell explained that, although some of

the records he considered were from outside the 2012 to 2016 relevant time period, the

symptoms described in these records were consistent with those that plaintiff experienced from

2012 to 2016, and plaintiff had suffered these symptoms "throughout this entire time." Tr. 1056.

Indeed, records from 2022 recognize plaintiff's "long history of depressive and shorter manic

episodes." Tr. 2940. For instance, in March 2009, plaintiff described that he would get very upset

at random times and quickly go from being upset to feeling "ok-good." Tr. 2050. Plaintiff was

unable to sleep for multiple days and isolated himself so that he would not "go off on someone

for no reason." *Id.* He experienced anxiety about everything. *Id.* This stemmed from his working

in "mortuary affairs" in Iraq where he "sorted dead bodies" and helped ship bodies of United

States soldiers home and Iraqi bodies to a refrigerator. *Id.* He also often saw parts and pieces of

dead bodies while he was restoring or removing equipment from damaged vehicles. *Id.* Records

from 2010 describe that medication was not working to curb plaintiff's hypomania, and he "still

goes a couple of days without much sleep and then crashes for a long night and another couple of

days without sleep." Tr. 382. Records from 2012 describe a history of depression that "comes and goes," and "unspeakable fear" and headaches from "weird" nightmares where he is "trying to get away." Tr. 770. Plaintiff was unable to "sustain employment over the years due to excessive irritability and difficulty getting along with superiors or coworkers," and quit his last job in 2013 because he had a conflict with another worker and was concerned he might try to harm the other worker. Tr. 685. Records from March 2015 describe "recurrent episodes of hypomania" where plaintiff slept less than four hours a night, had an elevated and sometimes irritable mood, racing thoughts, and increased distractibility. Tr. 683-84. These episodes would "emerge without any clear percipient," occurred on average every couple of months, and lasted one to two weeks. *Id.* Plaintiff also suffered recurrent episodes of depression that lasted from a few weeks to two months where he experienced fatigue and lack of appetite, slept for 12 hours per day, and sometimes had suicidal thoughts. *Id.* In September 2015, plaintiff continued to experience manic episodes, including a "recent 2.5 day stretch where he didn't sleep at all." Tr. 638. In 2016, plaintiff was still hypervigilant, irritable, triggered by "little things" that "set him off," and suffered from sleep issues. Tr. 601. He took medication but continued to have "bothersome PTSD symptoms" of irritability, hypervigilance, and avoidance. Tr. 602. In 2019, plaintiff's current medication was not working for him and he was unable to leave the house after starting it. Tr. 480. He reported increased anxiety and poor sleep of only three to four hours per night. *Id.*

In short, the ALJ discounted Dr. Bell's opinion based on portions of the record that showed normal functioning. But this does not adequately address Dr. Bell's opinion that plaintiff suffered recurring episodes of severe depression or mania and met the paragraph B criteria during those episodes, which occurred 20% of the time. Dr. Bell opined that plaintiff suffered

from these episodes "throughout the entire time," including the relevant period. The record, In fact, documents a "long history of depressive and shorter manic episodes," a portion of which is discussed extensively above. The ALJ's failure to properly evaluate Dr. Bell's opinion thus constitutes error. *See Ronnie R. v. Comm'r of Soc. Sec.*, No. 2:23-CV-34-DWC, 2023 WL 5927146, at *4 (W.D. Wash. Sept. 12, 2023) (noting the ALJ's failure to "discuss significant, probative evidence showing functional limitations in Plaintiff's physical abilities" and finding "[t]his omission in assessing Plaintiff's severe impairments was error").

The ALJ also found that Dr. Bell's opinion was not consistent with plaintiff's "regular daily activities." Tr. 2961. Elsewhere in the decision, the ALJ noted that plaintiff's activities of daily living included checking his email and phone messages, using social media, working on art and 3-D modeling, talking on amateur radio, playing video and board games, reading books, cooking, cleaning, washing laundry, moving grass, shopping, and going to the gym. Tr. 2955. But the record does not support the conclusion that plaintiff continued to engage in such activities while he was suffering from recurrent episodes of severe depression that lasted for a few weeks to a couple of months during which he was fatigued, slept 12 hours a day, ate once a day, and experienced anhedonia. Tr. 684 (records from March 2015). Thus, the ALJ's decision to discount Dr. Bell's decision on this basis is not supported by substantial evidence.

B.    **Gary Monkarsh, Ph.D.**

In September 2012, Dr. Monkarsh conducted an initial PTSD Compensation and Pension ("C and P") examination in connection with plaintiff's application for veteran's disability benefits. Tr. 1442-45. Using the VA's PTSD evaluation form, Dr. Monkarsh assessed plaintiff with "occupational and social impairment with reduced reliability and productivity." Tr. 1444. Dr. Monkarsh concluded that plaintiff "appears to suffer from chronic, moderate PTSD with

secondary symptoms of depression." Tr. 1448. Dr. Monkarsh stated that plaintiff suffered

"moderate social, occupational, and emotional impairment as a result of his anger control

problems, sleep disturbance, lack of interest being around people, and low motivation levels." Tr.

1448.

In January 2015, Dr. Monkarsh conducted a follow-up C and P examination for the VA.

Tr. 720-26. Dr. Monkarsh assessed plaintiff with "[o]ccupational and social impairment with

deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or

mood." Tr. 721. Based on this evaluation, Dr. Monkarsh concluded plaintiff "continue[d] to meet

the [] criteria for PTSD with secondary depression." Tr. 725. Dr. Monkarsh further opined that

plaintiff suffered from "severe symptoms" and his symptoms had "significant[ly] increased"

from the moderate symptoms he was suffering when evaluated in 2012. Tr. 725-26.

The ALJ found Dr. Monkarsh's opinions unpersuasive. Tr. 2963. The ALJ noted Dr.

Monkarsh "opined that [plaintiff's] mental medically determinable impairments cause

occupational and social impairment with reduced reliability and productivity," but found "the

degree of reduced reliability and productivity is not specified and vague." *Id.* This ignores Dr.

Monkarsh's opinion that plaintiff suffered from "severe symptoms" of PTSD, and

"[o]ccupational and social impairment with deficiencies in most areas, such as work, school,

family relations, judgment, thinking and/or mood." Tr. 721. In particular, Dr. Monkarsh

observed that plaintiff experienced nightmares six out of seven days of the week, had insomnia,

was up until 5:00 to 6:00 a.m., did not sleep more than three to four hours, was tired all day, was

isolated at home, did not even like going to the grocery store, verbally fought with his father, and

reported terrible problems with concentration, motivation, and energy. Tr. 721.

The ALJ also concluded that Dr. Markash's "opinion that [plaintiff] has 'marked' physiological reactions to internal or external cues and 'markedly' diminished interest or participation in significant activities is not consistent with the record that shows relatively unremarkable mental status examinations and quite conservative treatment." *Id.* In support of the conclusion that plaintiff had "generally normal mental status exams," the ALJ cited to select portions of the record from 2019 to 2022 where plaintiff was observed to be alert, cooperative, relaxed, and had good insights and judgment. Again, this ignores that plaintiff's mood disorder symptoms waxed and waned during this period. *See*, *e.g.*, Tr. 720 (January 2019 records showing plaintiff had increased anxiety, was sleeping three to four hours a night, and was unable to leave the house); Tr. 2650-52 (December 2020 records describing plaintiff's moods are up and down, he still had strong memories of the war, and struggled with anxiety, depressed mood, intrusive memories, and sleep issues). Moreover, even if plaintiff's condition arguably improved somewhat between 2019 and 2022, the record nevertheless contains sufficient evidence to support Dr. Markash's opinion regarding plaintiff's condition during the relevant period between 2012 and 2016. Thus, the ALJ erred in discounting Dr. Markash's opinion.

### C.     David Peterson, Ph.D.

Dr. Peterson testified as a medical expert at plaintiff's 2024 hearing. Tr. 2983-94. Dr. Peterson opined that plaintiff had moderate limitations and his conditions did not meet any listing criteria. Tr. 2987. He concluded plaintiff should be limited to simple and repetitive tasks, with no public contact and only occasional contact with supervisors and coworkers. Tr. 2988. Dr. Peterson recommended that plaintiff should be limited to work focusing on objects as opposed to people, with no tandem or teamwork and no fast-paced or piece-rate work. Tr. 2988.

The ALJ found Dr. Peterson's opinion persuasive because it was "generally well supported" and "consistent with the overall medical evidence record." Tr. 2959. The ALJ thus adopted all of the limitations advised by Dr. Peterson, except for the limitations regarding focusing on objects and not people and no tandem or teamwork. Tr. 2959. The ALJ explained that those limitations were subsumed by the limitation to only occasional contact with supervisors and coworkers already included in the RFC. Therefore, the ALJ reasoned that including these limitations would be unnecessarily duplicative. Tr. 2059.

Plaintiff argues the ALJ's failure to include a restriction of no tandem or teamwork in the RFC amounts to reversible error because that limitation is distinct from the limitation to occasional contact with coworkers or supervisors. Pl. Br. 17. Plaintiff argues that Dr. Peterson's recommendation of no tandem or teamwork was a concrete restriction that the ALJ was required to either incorporate or reject with an explanation. Tr. 18.

The Commissioner argues the ALJ merely translated the limitation to no tandem or teamwork into the occasional contact limitation. Def. Br. 10-11. But a restriction of no tandem or teamwork addresses a separate and distinct qualitative social interaction question. Indeed, Dr. Peterson addressed the issues separately, which indicates that he intended each recommendation to be considered separately. *See* Tr. 2988. Thus, the ALJ erred in failing to either include the limitation to no tandem or teamwork or provide a reasonable explanation for failing to include that limitation.

## II.    Step Five

Plaintiff contends the ALJ erred at step five. It is unnecessary to reach this issue in light of the ALJ's errors in evaluating the medical opinions.

### III.    Remedy

When the court determines the Commissioner erred in deciding to deny benefits, the court has discretion to remand the matter for further proceedings or the immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) ("The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion."). The court may remand for the immediate award of benefits if certain prerequisites are met. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), as amended (Feb. 5, 2016). The court "must . . . review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (simplified) (citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593.

If the court determines the record "has been fully developed . . . and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (simplified) (quoting *Garrison*, 759 F.3d at 1020). Even if these requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. The court will "generally remand for an award of benefits only in rare circumstances." *Treichler v. Commissioner*, 775 F.3d 1090, 1100 (9th Cir. 2014) (simplified).

As plaintiff correctly observes, this case has been remanded before. However, as the Commissioner observes, plaintiff has not challenged the ALJ's assessment of his subjective symptom testimony in this appeal. Thus, the court remands the case for the ALJ to reassess the

medical opinions, reevaluate plaintiff's subjective symptom testimony if appropriate, and conduct additional further proceedings as necessary for rendering a decision regarding whether plaintiff is disabled.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this decision.

IT IS SO ORDERED.

DATED December 16, 2025.

_/s/ Youlee Yim You_
Youlee Yim You
United States Magistrate Judge